## HILLARD v. REMINGTON TYPEWRITER CO.

(Circuit Court of Appeals, Second Circuit. April 13, 1909.)

### No. 202.

1. PATENTS (§ 72*)—ANTICIPATION—SCOPE OF MACHINE.

The scope of a machine, alleged to be an anticipation of a later patented machine, is coextensive with the range of adjustment of parts which its construction intelligently provides for.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 86, 87; Dec. Dig. § 72.*]

2. PATENTS (§ 328*)—ANTICIPATION—TYPEWRITER ESCAPEMENTS.

The Hillard patents, No. 554,874 and No. 580,281, for related improvements in typewriter escapements, are void for anticipation by a machine made by one Diss in 1890, which embodied the essential features of the patented devices.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the Circuit Court, Southern District of New York, dismissing a bill in equity charging infringement of two patents granted to complainant, viz., No. 554,874 (February 18, 1896) and No. 580,281 (April 6, 1897), both for improvement in typewriting machines. The second of these patents was by Judge Ray held valid and infringed in Hillard v. Fisher Book Typewriter Co. (C. C.) 151 Fed. 34. That decision was affirmed by this court. 159 Fed. 439, 86 C. C. A. 469. The earlier patent was first adjudicated by Judge Hough in the decree now appealed from. His opinion is reported in 163 Fed. 281.

Thomas B. Kerr, for appellant.

H. D. Donnelly and W. A. Redding, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The details of the complicated device covered by these patents, which are voluminous, covering 22 pages of printed matter and 38 figures, will be found set forth with sufficient fullness in the opinions above cited. It would serve no useful purpose to rehearse them nor to endeavor to epitomize them here. They deal with means for securing two functions, "camming back" and "repulser action," of which the first is claimed in the earlier patent, and the second in the later one. On the former appeal we held that it was proper to carve out of the earlier application the "repulser" idea and make it the subject of the later application. Following the decision on the former appeal, Judge Hough held that the

repulser patent "covers and includes any typewriter construction wherein carriage propelling power acts to return the members of the escapement and the parts connected therewith, including the finger keys and type bars to their normal position," and also that "the camming back patent covers and includes any typewriter construction whereby the rack and attached paper carriage can be spaced forward step by step with respect to and under the control of a dog and spaced backward by the impact of said dog." The opinion sets forth in detail the parts of the combination, their relations to each other, and the operation by which the results sought to be obtained are accomplished. We fully concur in this opinion. The record—except as to a device hereinafter referred to—is substantially the same as that which was presented on the former appeal, and would entitle complainant to a decree on both patents, were it not for a prior use, which the Circuit Court found to be an anticipation. The suit narrows, therefore, to this issue, which is the only one we find it necessary to consider. It is unfortunate that the particular prior use relied upon was not testified to in the earlier suit, so that the whole case might have been there determined. That use, however, was by the defendant here, and not within the knowledge of the other corporation, which was defendant in the earlier suit.

The particular anticipating structure, which is relied upon and which is before this court for the first time, is known as the "Diss Machine," or "Defendant's Exhibit No. 9," and a large part of the record is taken up with testimony in regard to it. It is a "No. 5 Remington," one of the forms defendant was manufacturing in 1890, having stationary dogs and a swinging rack; the rack being swung by the blow on the keys through the operation of the universal bar and connections. Diss, who was assistant superintendent in defendant's factory, modified this machine by substituting a beveled rigid dog for the ordinary straight-faced one and adding a rack-stop beyond the rigid dog to prevent the swinging rack from being carried too far by its momentum. The date when this modified machine was assembled is given as December, 1890, and several witnesses testified to its construction at that time, to its immediate transmission to the office in New York, and to its continued use there for several months by one of the stenographers employed in that office. Testimony which undertakes as a matter of mere memory to give the precise date of transactions which took place years before the witness testifies, or to identify one particular machine out of many, is usually of doubtful value; but in this case there are circumstances which make it quite convincing. In the first place the particular machine is identified, not by a number, as to which recollections might be confused, but by a detail of construction which challenged the attention of every one who looked at it. It had four front guide rolls for the paper carriage, and was the only Remington typewriter fitted with a paper carriage having four front rolls. This earmark distinguished it in the recollection of every witness who saw it from its construction until to-day. Dated drawings, old letters, shipping slips, and book entries identify this "No. 5 without number sample machine with new carriage" as being the very machine which Diss undertook to improve upon, and which,

with his modifications embodied in it, was shipped to New York from Ilion on December 20, 1890, and immediately thereafter put to use in the office of Wyckoff, Seamans & Benedict, defendant's representatives in that city. That a No. 5 machine with a beveled rigid dog and a rack stop was produced by Diss in December, 1890, and was successfully operated, cannot be doubted upon these proofs.

We need not follow the Circuit Court in its review of the details of this Diss machine, nor pass in review the highly technical discussion of the opposing experts as to what that machine does or does not show. Upon the argument Exhibit No. 9 was operated before us in such a way as to make visible the slight camming back action of which so much has been said. Unskilled manipulation in the consultation room has so misadjusted it that it now fails to disclose anything in particular; but that is not material. Complainant on the argument, in response to inquiries by the court, conceded more than once that in the form and condition in which Exhibit No. 9 was then it would be an infringement of both patents, and if earlier in date would constitute an anticipation. Complainant's position with regard to this exhibit is that its condition has been changed subsequently to the date when it was introduced in evidence (June 7, 1906). We have most carefully examined all the testimony bearing on this serious charge of tampering with exhibits, and fail to find in it any support for the charge. Certain parts of the machine are made adjustable. The universal bar may be raised or lowered by nuts on the screw-threaded ends of the rods that hold it. Apparently such adjustment would modify the amount of "drop" or forward feeding movement of the carriage during the down stroke of the key.

Concededly there have been changes made in the adjustment of adjustable parts since the machine was produced; but we concur in the conclusion of the Circuit Court that such adjustment did not change its character. The scope of any machine is co-extensive with the range of adjustment of parts which its construction intelligently provides for. We concur with Judge Hough in his conclusion as to Exhibit No. 9, viz.:

"The final question seems to be whether the machine made by Diss in 1890, as he made and designed it, used and exhibited it, did produce the same results in the same way as does the Remington No. 6 (the alleged infringing device). I think it did, and that the reasons why it did so were completely understood by several persons, who saw and examined it and would have been capable of reproducing it had occasion arisen."

We are not satisfied on the proofs that the so-called "beveled rack" made by Hillard, as he contends in 1890, carries him back of this Diss machine. Anticipation is therefore established, and the decree of the Circuit Court is affirmed, with costs.