HILLARD v. FISHER BOOK TYPEWRITER CO. et al.

(Circuit Court of Appeals, Second Circuit. March 20, 1912.)

No. 153.

PATENTS (§ 328*)—ANTICIPATION—TYPEWRITER ESCAPEMENT.

The Hillard patent, No. 580,281, for improvements in typewriter escapements, *held* anticipated by a machine made by Diss in 1890, which embodied the essential features of the patented device.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by Frederic W. Hillard against the Fisher Book Typewriter Company and the Elliott-Fisher Company. Decree for defendants, and complainant appeals. Affirmed.

Arthur von Briesen and Eugene Eble, for appellant.

Henry D. Donnelly, W. A. Redding, and W. F. Bissing, for appellees.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. April 6, 1897, letters patent No. 580,281 issued to Frederic W. Hillard for improvements in typewriter escapements. He brought suit for infringement against the Fisher Book Typewriter Company and the Elliott-Fisher Company, wherein the patent was found valid and infringed. 151 Fed. 34, affirmed 159 Fed. 439, 86 C. C. A. 469. Thereupon the defendants obtained a license under the patent. Subsequently Hillard brought another suit against the Remington Company, which set up an anticipating structure, known as the Diss machine, which was held to be a good defense. 163 Fed. 281, affirmed 170 Fed. 73, 95 C. C. A. 349. Thereupon the defendants in the first suit moved to open the case, in order that they might set up the defense of the Diss machine, which motion was granted. Upon this new defense the Circuit Court dismissed the bill, and this is an appeal from that decree.

The particular improvement involved was a beveled rigid dog and rack stop, which have been so fully discussed in the foregoing cases that nothing need now be considered, except the effect to be given the new proofs, consisting principally of letters between the Remington factory, at Ilion, N. Y., and the company's agents, Wykoff, Seamans & Benedict, in New York City. The Diss machine has been produced, and its history between December, 1890, and date fully accounted for. It has now a rack stop and an escapement whose rigid dog is beveled. Many of the defendants' witnesses are enabled to identify the machine, because it is the only one they ever saw that had four front guide rolls. Some of these testify that it was in 1890 in exactly the same condition as it is in now. The complainant contends that such witnesses testify argumentatively; that is, they take it for granted that no change has been made in the meantime. Conceding this to be so, there are still left Diss, the inventor, Cox, the mechanic who assembled the machine, and Jenne, the superintendent of the factory, all of whom testify positively that an escapement having a beveled rigid dog was put on it in December, 1890. They were all experts, and their testimony must be true or else deliberately false.

The complainant contends that the escapement was put on the machine after October 13, 1891, and largely relies for this on a letter of that date, written from New York by Seamans, the secretary of the Remington Company, to the factory at Ilion, N. Y., in which the improvements by Diss on the No. 5 machine are discussed. There was a change in the position of the four front rolls as originally devised. The Dyett drawing of June 24, 1890, shows two on each side of the

front rod at the corners inclined toward each other. On the machine as it stands two of these rolls at the opposite corners and on opposite sides of the rod are now mounted vertically. The complainant thinks that the letter in question shows that this was done after its date, and that the machine may well have been reconstructed after that time in other particulars also. The importance of this is obvious, because the complainant carries his invention back to at least December 18, 1891, and the defendants, to anticipate, must show that the rigid beveled dog and rack stop were put on the No. 5 machine before that date. The letter criticises the weight of the four rolls, saying:

"Our objection to it is that it throws weight on the front carriage unnecessarily, we think, and as now constructed the one roller at the front which has a perpendicular face strikes on the front rod and would soon cut it to pieces."

This shows clearly that the original arrangement of the four rolls had been changed before that date. At least one of the rolls was at that date mounted vertically. The writer goes on to suggest two different plans for reducing the weight by having only two rolls. The changes recommended in these plans, which have not been produced, were evidently never carried out. The correspondence constantly refers to a comparison to be made between different escapements. Several forms of escapement were then well known, each consisting of two dogs, one rigid and one limber, viz., the "ordinary escapement," consisting of two straight-faced dogs, which caused the carriage to feed on the upward stroke of the key, and the "reversed escapement," consisting of two straight-faced dogs, which caused the carriage to feed on the down stroke of the key. The first of these was suitable for slow and the second for fast operators.

In 1890 one Webb, an employé of the Remington Company, invented a reversible escapement; that is, one which by the use of a cam could be made either an "ordinary" or a "reversed" escapement. The complainant insists that the comparison intended in the correspondence was between Webb's reversible escapement and the "reversed escapement"; whereas the defendants say that the comparison was between the beveled rigid dog escapement of Diss and the other escapements. We cannot appreciate the purpose of the comparison which the complainant suggests. When the Webb reversible dogs are set as a reversed escapement, it is a reversed escapement, and there is nothing to compare. When they are set as an ordinary escapement, they are of a different class from the reversed, and there is no purpose for a comparison. On the other hand, the comparison between the Diss escapement and the "reversed escapement" and the "ordinary escapement" would seem to be entirely natural.

There is no express mention of a beveled rigid dog in the correspondence until September 29, 1893, when the factory wrote to the agency:

"First and last much has been said about reverse acting dogs for the No. 6, or dogs which could be set alternately to act in the usual manner and as reverse acting as required. But reverse acting dogs are not always desirable, and the double kind must necessarily be more expensive and heavier in action, both of which are objectionable. We have therefore been experimenting

with the beveled rigid dog in connection with that machine, and will put forward to you a machine on which Mr. Diss has placed a beveled dog that seems to be of the most approved form, and will ask you to have it fully examined, tried for speed and for general work as well, and would like your opinion as to the advisability of letting it supersede the present style for that machine."

The complainant contends that this letter shows that the Diss beveled rigid dog was an invention of 1893 or thereabouts. It seems to us, on the contrary, that it is referred to, not as a new thing, but as one previously known to the parties. It certainly was known before May, 1894, when the complainant communicated his invention to the Remington Company for the first time and left his model with it. It is quite likely that the principle and value of this dog was not fully appreciated. Complainant himself does not seem to have done so until June 22, 1892, in his letter of that date to his patent attorney, and he did not bring his invention to the attention of the Remington Company until May, 1894. December 17, 1890, the factory wrote to the New York office:

"Mr. Diss has completed his No. 5 machine ready to send to you; also the No. 2 which you sent us for the addition of several devices is completed, with the exception that the spacing dogs on Diss No. 5 work so well he is now trying to put the same on this No. 2."

December 20th both these machines were forwarded to New York, and on December 22d the factory wrote to the New York office as to the No. 2 machine:

"The dogs are the double-acting dogs like the sample sent here from New York, and work very well in both positions; but the writer thinks the position which gives the spacing the same as that now used will be the one used in actual work. But when in that position they work as well as the old ones, with possibly a little exception because of the weight of the rigid dog; therefore there is nothing to object to in the double form, but the slight additional cost."

The complainant argues that this letter, showing the Webb reversible escapement, also called double-acting dogs, was put on the No. 2 machine, taken in connection with the letter of the 17th, wherein it was said Diss was trying to put the same escapement on the No. 2 which he had put on the No. 5, shows that both machines were fitted with the Webb reversible escapement. In view, however, of the positive testimony on the subject, we feel compelled to draw a different conclusion, namely, that if Diss tried to put the rigid beveled dog on the No. 2, he did not succeed in doing so, and that therefore the No. 5 had a beveled rigid dog and the No. 2 a reversible escapement. This seems to be confirmed by the letter from the factory of April 11, 1891, which contains the following:

"In this connection we have fitted up a No. 2 machine with dogs that act the same as those on the No. 5 machine with the new carriage which you have in New York on trial, and do not see but about the same results as regards speed are attained with them as with the reverse-acting dogs."

This cannot mean the Webb reversible escapement, because the letter of December 22d shows that the No. 2 machine sent with the No. 5 to New York had the reversible escapement. It was at the date of

the letter in New York, and there would seem to have been no use in sending another.

We do not attach much importance to the fact, relied upon by the complainant, that the writers in this correspondence constantly use the plural in speaking of the dogs. If they had in mind the "ordinary escapement" with the rigid dog beveled, it would not be unnatural, if not strictly accurate, to speak of beveled dogs, there being two dogs.

Finally there is the argument that the letters written on the No. 5 machine by Miss Easton in the winter of 1890–91 could not have been written on it with the rack stop at tooth No. 10. The court below thought that there was no sufficient proof that the rack stop was then always at tooth No. 10, or, if at No. 10, that the paper was exactly even with the left end of the roll. We concur in that conclusion.

The argument of the complainant is ingenious, presents difficulties, and causes some doubt; but our conclusion on the whole case is that Diss did invent the beveled rigid dog escapement as early as December 17, 1890.

The decree is affirmed, with costs.