HILLARD v. FISHER BOOK TYPEWRITER CO. et al.

(Circuit Court of Appeals, Second Circuit. January 7, 1908.)

No. 88.

1. PATENTS—ANTICIPATION—PRIOR APPLICATION IN PATENT OFFICE.

Statements in a prior application for a patent, relied on as an anticipation of a patent granted while such application was pending, must be so clear and explicit that those skilled in the art will have no difficulty in ascertaining their meaning.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 77.]

2. SAME—PRIOR PATENT—ACCIDENTAL FUNCTIONS.

Although a new function appears in a machine made under a patent, if it was accidental, unrecognized by the patentee, and no disclosure thereof made to the public, it is not an anticipation of a subsequent patent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 70.]

3. SAME—INFRINGEMENT—CHANGE IN FORM AND MANNER OF OPERATION.

Although devices may differ in form, in appearance, and in the manner of operation from those combined in a patent, if they combine to do the same work in substantially the same way, they are an infringement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 380.]

4. SAME—TYPEWRITER ESCAPEMENT.

The Hillard patent, No. 580,281 for an improvement in typewriter escapements, was not anticipated, and discloses an invention of more than ordinary merit, which entitles the patentee to a fair range of equivalents; also *held* infringed by the machine of the Fisher patent, No. 573,868.

Appeal from the Circuit Court of the United States for the Southern District of New York.

On appeal from an interlocutory decree holding valid and infringed claims 30 to 35 inclusive and claims 37, 38 and 41 of letters patent No. 580,281 granted to the complainant April 6, 1897, for improvements in typewriter escapements. The opinion of the Circuit Court is reported in 151 Fed. 34.

William A. Redding and D. Walter Brown, for appellants.

Thomas B. Kerr and John C. Kerr, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. This is an infringement action founded on letters patent granted to the complainant for improvements in typewriter escapements. We do not understand that the defendants deny patentability, the defense, briefly stated, being that if the claims are construed in accordance with the statements of the specification and file wrapper, they are not infringed, and, on the other hand, if a construction broad enough to cover the defendants' machines is placed upon the claims, they are for functions only and are anticipated by complainant's prior patent and by the prior art. The patent deals with the most minute details and is exceedingly voluminous, containing 12 pages 8¾ inches long and 5½ inches wide of description and claims and 4 pages of drawings, containing 20 figures. To attempt to describe the invention in detail would serve no useful purpose as the questions involved are of little general interest and are already thoroughly understood by the parties to this action. Should others

wish to familiarize themselves with the intricacies of the patent they will find its essential features, together with the claims involved, quoted in the opinion of the judge of the Circuit Court.

The main objects of the invention were to attain a uniform and certain feed at high speed by controlling the moment of release of the paper platen to avoid blurring caused by the movement of the paper at the instant of printing, and to secure an escapement which polishes its contacting surfaces. The invention covered by the claims in controversy "comprises, broadly, means for bringing the carriage-propelling power into action with the key while the key is depressed and for thereby employing the force of the propelling power to aid in lifting the key and re-engaging the disengaged members in the escapement and in restoring the printing member to normal position synchronously and in unison with the feed of the paper-carriage." The gist of the invention is the employment of the mainspring, which had previously been used to move the paper-carriage only, to move the escapement rocker and key levers back to their normal positions, after the finger key is depressed by the stroke of the operator; thus insuring greater speed, accuracy and neatness in printing. The inventor says:

"My theory was that if I could arrest that depression (pushing the keys down too far) after the blow on the key had started the type bar to the printing cylinder with sufficient force so that its own momentum would cause it to complete its excursion to the cylinder, even after the depression of the key had been arrested, that then all the advantages of the reversed escapement could be utilized without incurring the defect in blurring."

His improvement which he called "a repulser" on Webb's reversed escapement (patented in No. 577,982) remedied, but did not cure the existing defects, and subsequently he succeeded in producing an escapement, designed to remedy some of these defects, which is covered by his patent No. 554,874.

The patent in suit, which, as we have seen, utilizes the mainspring to return the moving parts to their position of rest and relieves the key of its heavy action, was, as he says, "the culminating point" of his work up to that time. It is true that this use of the mainspring may be shown in the first four figures of No. 554,874, but it is not covered by the claims of that patent which are confined to the two features which the patentee regarded as the essence of his invention —the buckle-joint and the cam for camming the carriage back. The feature which gives vitality to the patent in suit was expressly carved out of No. 554,874 and reserved for patenting in No. 580,281. The specification expressly says so. On page 8 at line 6 are these words:

"I do not in this specification make any claim specifically to the mechanism shown in Figs. 1 to 4 and 9 and 10, nor to any swinging-rack form of escapement * * * and the swinging-rack form is merely shown herein to present adequately the full scope of my invention. I claim these forms in my other application for typewriter escapements filed January 9, 1893"—the application for the patent in suit.

The patent is thus clearly within the protection of the rule followed by this court in Thomson-Houston Co. v. Elmira Co., 71 Fed. 396, 404, 18 C. C. A. 145.

The patent granted to Arthur W. Cash December 30, 1902, is also relied on by the defendants. The application was filed September 1, 1886, 16 years and 3 months before the patent was granted. It is important, therefore, that the examination of what Cash accomplished should be restricted to a period anterior to January 9, 1893, the date of Hillard's application. It is argued that Cash described a reversed escapement in which there can be no effective repulsion of the key by the mainspring because the rack rests upon the unsupported limber dog when the key is depressed. The Circuit Court so found and held that the Cash patent when limited to the original application did not disclose the Hillard invention. We incline to the opinion that this finding is correct, but even were it doubtful it would not aid the defendants. Statements in a prior application relied on to prove anticipation must be so clear and explicit that those skilled in the art will have no difficulty in ascertaining their meaning. Where they are so vague, involved, intricate and contradictory that experts disagree radically as to their meaning and, following the instructions given, construct devices differing in fundamental features, it is safe to reject such a document as an anticipation. The question is—did Cash, prior to January 1893, invent a machine embodying the improvement of the Hillard claims in suit? We are, on this proof, unable to answer this question in the affirmative.

The same observation is applicable to the Hammond machines in evidence. Although it is argued by the defendants that the feature of which anticipation is predicated is present in the machine, it is admitted by their expert that it is not found in the specification. He says:

"I do not find in the specification of the said Hammond patent any reference to the said positive repulsion of the dog."

Assuming Hillard's improvement to be present in the machines in evidence, it is difficult to believe that Hammond had an intelligent conception of the invention and failed to make the slightest allusion to it in his patent. If the new function existed in the machines made under the patent, and this is vehemently disputed, it was accidental, unrecognized by the patentee and no disclosure thereof made to the public. Mr. Justice Bradley says:

"If the acids were accidently and unwittingly produced, whilst the operators were in pursuit of other and different results, without exciting attention and without its even being known what was done or how it was done, it would be absurd to say that this was an anticipation of Tilghman's discovery." Tilghman v. Proctor, 102 U. S. 707, 711 (26 L. Ed. 279).

It is unnecessary to pursue the subject further as we agree with the judge of the Circuit Court that Hillard has made an invention of rather more than ordinary merit which has very materially improved the work of the typewriter, increased its speed and enhanced the neatness and accuracy of its work. We do not understand that the utility of the invention is disputed; but if it were, it is enough to say that it is difficult to imagine an instance where a patent should be defeated on this ground at the instigation of one who is himself persistently using the very thing which he denounces as useless.

The claims should be construed with sufficient liberality to protect the improvement which Hillard has actually made; he should hold what he has invented and nothing more; less than this would be unjust to him, more than this would be unjust to the public. In the narrow field of invention he is entitled to a fair range of equivalents.

One who produces the same result by the use of devices operating in substantially the same way is an infringer. It matters not that the devices may differ in form, in appearance and in the manner of operation; if they combine to do the same work in substantially the same way it is enough. The defendant's machine is made under letters patent No. 573,868 granted to Robert J. Fisher, December 29, 1896, application filed April 30, 1896, for improvements in book-typewriters. To this machine is added a feature which employs the mainspring to return the members of the escapement to their normal positions after the finger key is depressed. In short, the complainant contends that after his invention had been made public and was in actual use by the Remington Company, the defendants introduced bodily into their machines devices, which, while operating in a different manner, enable them to appropriate all the advantages and accomplish all benefits of Hillard's invention.

For the rack of the patent the defendants substitute a toothed wheel and a detaining dog and spacing dog, which alternately engage with teeth on the opposite sides of the wheel. The dogs are rocked by a lever connected by a train of mechanism with the type key, which, when pressed downward by the operator, causes the dogs to rock on their pivot disengaging the detaining dog and engaging the spacing dog on the opposite side of the wheel—the wheel being moved by the pull of the mainspring. The tension of the mainspring is communicated through the wheel to the spacing dog, the inclined surface of which, coming in contact with the tooth of the wheel pushes the dog out of engagement with the wheel, and, at the same time, causes the re-engagement of the detaining dog on the opposite side of the wheel. This operation is set in motion by pressure upon the finger key and, through a combination of connecting devices, causes the mainspring to aid in lifting the key towards its normal position of rest. Both the Hillard structure and that of the defendants have a printing carriage propelled by the mainspring, an escapement for controlling the speed of the carriage, a type bar with type carried thereon, and key, all properly connected and a connection between the dog member of the escapement and the key for disengaging and engaging the dogs. When the escapement is in its disengaged position the pull of the mainspring in both structures, tends to force the spacing dog out of engagement with the rack and to re-engage the detaining dog. This power is exerted on the printing member, while it is still at the printing point, so that it starts the type-bar back toward its normal position. In both machines, the spacing dog in moving out of engagement moves on a line oblique to the direction of the tooth in spacing.

To a layman the defendants' apparatus seems very different from that employed by the patentee, but to a mechanic who looks to results rather than appearances, it probably appears quite similar. It may be that the defendants' machine shows the simpler and better con-

struction, but that it accomplishes the same results in substantially the same manner, we have little doubt. It is the substitution of one form of escapement for another, with the Hillard improvements added.

In the recent case of Wagner Co. v. Wyckoff, Seamans & Benedict, 151 Fed. 585, 592, 81 C. C. A. 129, we had occasion to examine a somewhat similar situation, where the parts of the infringing device had been so skillfully manipulated and transposed that it required the most careful analysis to discover, what we held to be the fact, that it contained every element of the patented structure and accomplished the same result. The broad claim, No. 41, is as follows:

"In a typewriter, the combination, of a key, carriage-propelling power, an escapement, and means for bringing the propelling power into action with the escapement to lift the key when the key is depressed, substantially as described."

It was thought at the argument that the fourth element of the claim — "means for bringing the propelling power into action with the escapement to lift the key when the key is depressed"—was too broad and general and might cover any means for accomplishing this result. Subsequent reflection has, however, led us to conclude that if the claim is construed to cover only such means as are described and shown, and the plain equivalents therefor, it may be sustained. The means described in the specification though too technical and complicated to be reproduced here are, it is thought, stated so plainly that those skilled in the art will have no difficulty in understanding them.

Bearing in mind the character of the specific improvement covered by the claims in controversy, namely the utilization of the mainspring for the purpose described, which we believe was new with Hillard, we find nothing in the prior art or in the file wrapper which requires a construction of the claims which will enable the defendants to escape the charge of infringement.

The decree is affirmed with costs.