KARFIOL v. ROTHNER et al.

(Circuit Court, E. D. New York. November 30, 1908.)

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PROCESS FOR MAKING LACE PAPER.

The Karfiol patent, No. 835,189, for a process for making lace paper by indenting the paper in the desired pattern and then grinding off the indentations, instead of cutting out the pattern, was not anticipated, and discloses novelty and invention; also *held* valid as against the defense of prior use and infringed. Patent No. 835,190, to the same patentee, for a multiple machine for practicing such process, *held* not infringed. Patent No. 835,283. for a single or unit machine, also *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

2. PATENTS (§ 52*)—PRIOR USE.

The fact that the method of a process patent had been previously used by another by chance, and without appreciating its merit or value, does not invalidate the patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 70; Dec. Dig. § 52.*]

In Equity. On final hearing.

See, also, 151 Fed. 777, 779.

James L. Steuart (Steuart & Steuart and Daniel W. Troy, of counsel), for complainant.

William Reiss (Reiss & Reiss, of counsel), for defendants.

CHATFIELD, District Judge. The complainant is the patentee of a machine and a method for the making of lace paper; that is, paper containing perforations in an ornamental design, more or less resembling lace or embroidery. The particular patents in question, Nos.

835,189, 835,190, and 835,283, were issued upon the 6th day of November 1906, upon applications filed, respectively, July 5 and July 17, 1906, and July 5, 1906.

The first patent relates to the method of perforating the paper, and in general describes a change from the ideas of cutting perforations or holes with the aid of some tool and a subsequent brushing away of the severed particles. In Karfiol's specifications he claims that he indents the paper where the perforations are desired in the pattern, and that he then, according to claims 3 and 6, grinds or abrades "the indentations until the same are reduced to a plane flush with the surface of the sheet, while maintaining the latter in resilient engagement with the grinding tool." And in claim 4 he states that he cuts the "indentations from the material while maintaining the latter in resilient engagement with the cutting tool." The second patent relates to an improvement in perforating machines, specially adapted to the manufacture of lace paper, and in general relates to the mounting of several single machines or cutting elements upon one shaft, or in such a way as to be driven collectively. The third patent covers the construction of a single machine to carry out the method of the first patent, and is repeated in a multiple construction in the second patent described.

It may be assumed that the method described in the first patent and the form of construction of the third patent are applied in multiple form in the machine described in the second patent, and that any question of infringement by the defendants must be determined rather upon the validity of the inventions relating to method and the form of a single or unit machine; for there seems to be no evidence that the defendants are infringing, in the sense of making use of a multiple arrangement of machinery, as distinguished from their use of a single machine. It appears from the testimony that for some time prior to the filing of an application for this patent the complainant attempted to enjoin secrecy upon his employés not to publish his methods of operation, nor to give to the world any improvements which he may have devised. The defendants have disputed the allegations of the complaint that the improvements patented by complainant had not been in public use or on sale for more than two years before his application for a patent, nor in public use or on sale in this country before the invention or discovery of the same by the complainant, and for more than two years prior to the date of the application. Upon this rests substantially the defense.

But this issue, as well as all others in the case, depends upon the determination of the one question as to what use of certain elements was made by the complainant, both in his business and as described in his patent, and whether the use made of similar elements by other people in the same business is identical with that which the complainant has attempted to patent. In fact, the question as to whether the method claimed in the patent can be used or will produce the results claimed, except as the machinery is used in the old and well-known form, is a part of the issue that must be determined. The entire case depends upon this one question. Use has been shown by various witnesses of different parts of the machine constructed by Karfiol and of

some points of the method of operation for which the patent was granted. In fact, the original machines upon which he did his experimenting, and out of the use of which his patent grew, after one Erickson had been called upon to make mechanical changes in the arrangement of the parts of the machine, were built by one of the witnesses in the suit, who testified that the machines which he built, and which the complainant used, could not be operated in any way other than for the purposes long known in the trade, and for the accomplishment of which these very machines were originally built by that witness a number of years before.

A brief description of the parts of the machine and of their purpose must therefore be considered. As originally constructed the machine drew paper from a roll. This paper passed between two cylindrical rollers, one of which had upon its face a series of cutting dies corresponding to the pattern desired. The other of these two rolls was made of some material, such as lead or composition, which received the impact of the cutting surfaces as they penetrated the paper when passed between. This paper, after being cut in the design of the dies, was carried over a revolving brush of some nature, which removed the cut particles, it having been found that these particles did not fall out, even though entirely severed, and the perforated paper was then rolled upon still another roller, called a "take-up roll."

In the method patented by Karfiol the paper is drawn, as in the other processes, from the roll, and passed between two cylindrical rollers; but these rollers are so adjusted and so operated that the paper is indented or embossed, rather than being cut. The roller upon which the die or pattern exists is not pressed against the corresponding roll with sufficient force to perforate or cut the paper. In fact, this corresponding or opposing roll is described in the patent as having cut into its face the counterpart of the design of the roll upon which the pattern is carried. It is called a "matrix roll," and is said to be of softer material, and to receive its design by rolling engagement before the insertion of the paper. After this indenting and embossing of the paper, the paper is carried, by a mechanical and resilient pressure device, over an emery or other grinding tool, which revolves with sufficient rapidity to grind off the protuberances flush with the surface of the paper. From the grinding roll the finished paper passes to a take-up roll, as in the old machine. Karfiol in his specifications has claimed the right to remove the indentations by a cutting tool, such as a knife edge, or in any other way; but inasmuch as he describes his process to be that of raising indentations, rather than cutting a pattern with a die, and as the object he claims may be effected better by grinding than by cutting, he states that he prefers to grind the pattern, so that the perforations shall be flush with the face of the paper, and this is apparently the method which he has used in practice, and which the defendants have used in their alleged infringement.

As has been said, the entire defense is based upon the contention put forth upon the trial and the argument, rather than stated in the pleadings, that the complainant does not use any new method, and has made no patentable invention. The defendants, in effect, charge that

Karfiol could not do successfully and commercially what he obtained a patent for, and the defendants claim that they do not infringe, inasmuch as they say that they, as well as the complainant, and the various paper manufacturers referred to in the testimony, are all using the old cutting method, rather than the protuberances and grinding method described in the patent. To support this some testimony was given by one of the manufacturers having a number of years before tried an emery roll for the purpose of brushing out the particles from the cut or perforated pattern. His use of an emery roll for that purpose was discarded, and his testimony does not show that he ever attempted it for the purpose or in the way in which the complainant states in his patent that he intends to have the emery or other grinder used.

The complainant, his lay witnesses, and his expert, all agree that the machines operated since the so-called invention, and which were in use at the time of the application for the patent, perform the functions described in the patent. These witnesses all agree that Karfiol's machines did not cut or perforate the paper. The testimony in the entire case also seems to show satisfactorily that the defendants were making use of the same methods as those which Karfiol employed under his patent, and Karfiol would seem to be entitled to an injunction restraining them from such use. The method covered by Karfiol's patent, and the change from the former ways of manufacturing, are sufficiently novel to be patentable, and as to that particular process no prior use nor anticipatory knowledge seems to have been satisfactorily shown.

The application of the idea is much like that held patentable in the case of Hillard v. Fisher Book Typewriter Company and Elliott-Fisher Company, 151 Fed. 34, affirmed by the Circuit Court of Appeals on January 7, 1908, 159 Fed. 439, 86 C. C. A. 469. If by chance any manufacturer of lace paper had accomplished the result in the way described in Karfiol's patent, it would seem to have been done inadvertently, and even at the present time not to have been appreciated as being a departure from the original and old methods of manufacture. This would not interfere with the patentability of Karfiol's idea, nor the validity of his patent. Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279.

If the defendants are making use of the old idea and the old methods, they will be free from punishment for further infringement. If they have or shall make use of the idea and methods covered by Karfiol's patent, they should be enjoined. The testimony shows that for a time at least they did make use of Karfiol's methods, and Karfiol, therefore, may have a decree establishing the validity of his patent, together with an injunction against further infringement, and with an accounting to determine damage for use already made by the defendants of the complainant's method and process.