**MUENCH–KREUZER CANDLE CO., Inc., a corporation, Appellant,**

v.

**Lester F. WILSON, Appellee.**

**No. 15132.**

United States Court of Appeals Ninth Circuit.

June 24, 1957.

1. The patent was issued March 15, 1949. The original filing was March 13, 1945.

Lyon & Lyon, Charles G. Lyon, Los Angeles, Cal., for appellant.

H. Calvin White, Los Angeles, Cal., for appellee.

Before STEPHENS, CHAMBERS and BARNES, Circuit Judges.

CHAMBERS, Circuit Judge.

This is a patent suit involving Wilson's Magi-Color candle and Muench-Kreuzer's Make-a-Rainbow candle. Wilson holds patent No. 2,464,361 for Magi-Color.[1] The Make-a-Rainbow, which as it burns achieves the same result, is unpatented.

A little candle history is pertinent. Mention of candles is found in the Bible.[2] And their use has continued through the centuries. For many years in the modern era one of the objectives of candle makers has been to eliminate the dripping of wax as the candle burned. Finally, having achieved a virtually dripless candle, at least dripless in the absence of wind, men turned about face, at least in the novelty field, and sought to achieve again the maximum drip or messiness at-

2. Book of Psalms 18:28; Matthew 5:15; Luke 15:8.

tainable from a candle. A "dripper" is easily obtained by reducing the size of the wick in relation to the body of wax or by keeping the same wick and increasing the circumference of the surrounding wax. Too small a wick for the size of the body reduces the amount of capillary attraction of hot wax into the wick; thus the hot wax in the bowl under the flame cannot all be consumed in burning. So it runs or drips over the sides.

And into this trade of making dripping candles has come color. The underlying concept of the Wilson candle patented on March 15, 1949, and produced as Magi-Color, was a surprise package. There would be successive drippings of different colored waxes spilled over the side. Perhaps, red, then blue, then yellow, then green and then orange. If Wilson had simply piled a wide collar, band or ring of wax of one color after another around a wick from top to bottom, he could have achieved the Jacob's coat effect on the unburned candle and also again in the drippings when it was burned. But he wanted the surprise. So, in building a candle that was white on the outside, he put collars of wax in solution but in high concentration (called mother color or muetter farben in the trade) around the wick. These collars, after application, were well secreted from the exterior of the candle and not visible from the outside.[3] Sometimes the collars of color were contiguous to each other along the wick. At other times uncolored collars of wax separated those that were colored. Again there would be space on the wick between colored rings which was not filled in until the real body

of the candle was made by adding the body wax [4] or candle stock for the body, either by dipping or molding. With this procedure worked out, Wilson applied for his patent. To get a patent at all, Wilson had to restrict his original claims and even then he had to carry it up to the Board of Appeals of the Patent Office. As a minimum, Wilson had a good timely commercial idea and at least one unlicensed competitor, Muench-Kreuzer, was quick to come out with a similarly constructed candle. Under threat of Wilson's claims of infringement, Muench-Kreuzer changed its production methods by adding two more steps to the process. It made a pencil sized taper with the wick inside of that. Then it painted at spaced intervals on the outside of the small taper bands or collars of mother color. Then with further dipping (or molding) the candle was built up to its normal size, the surprises hidden from the outside view.

We are not told how long the practice has obtained, but it is apparent that candles have been made for some time with a wax jacket of color which contrasted with the core of the candle. Also, there has been vertical striping or striping generally upward but following the pattern of rope cording or twisting.

With this preliminary matter stated, it is now appropriate to set forth the claims of Wilson as they were finally allowed:

"I claim:

"1. A drip candle comprising a wax-like body, different wax-soluble dyes normally concealed within the

---

**3.** As an unused candle grows old there is a tendency for the dye placed within the candle to migrate or "bleed." Also, heat will expedite the bleeding. The bleeding may even reach the surface, thus destroy the candle's inside color secrets.

**4.** The term wax in the opinion is not used specifically but generically. There are beeswax candles in the novelty field made by a rolling process. Tallow (and its modern derivative stearin or stearic acid) has long been a material used in the body of candles. Probably now the great

source of the body material is found in some of the by-products obtained in the refining of petroleum. The great bulk of commercial candles is made in molds into which the wicks precede the body wax, called candle stock. The record here seems to point to the fact that the old process of dipping is common now, particularly in the novelty group. Perhaps both Magi-Color and Make-a-Rainbow were manufactured entirely by dipping. But if molding were used, there would be nothing in that which should affect our end result here.

interior of the body at different locations longitudinally thereof and *normally undissolved in the wax of said body*,[5] said dyes dissolving in the melted wax of the body to form multi-colored drippings as the candle progressively burns. (Emphasis supplied.)

"2. A drip candle having a wax body and a wick containing a coloring material which dissolves in the wax as the candle burns to form drippings colored different from the normal exterior color of the candle.

"3. A drip candle having a wax body and a wick containing different coloring materials which dissolve in the wax as the candle burns to form multi-colored drippings.

"4. A drip candle having a wax body and a wick, spaced successive portions of which are impregnated with coloring material which dissolves in the wax as the candle progressively burns to color the drippings differently from the exterior color of the candle.

"5. A drip candle having a wax body and a wick, successive portions of the wick being impregnated with different colored dyes which dissolve in the wax to produce multi-colored drippings as the candle progressively burns.

"6. A drip candle having a wax body and a wick, successive portions of which are impregnated alternately with wax and different colored dyes which dissolve in the wax to produce multi-colored drippings as the candle progressively burns."

If the claims are valid, Muench-Kreuzer, the defendant, (appellant here) clearly infringed the Wilson patent until September 5, 1952, when it modified its method by moving the mother color slightly away from the wick toward the periphery. When Wilson as plaintiff, now appellee, on March 6, 1953, brought this suit, patent infringement was admitted by the defendant until September, 1952, on condition the Wilson patent be found valid. After the change of September, 1952, Wilson can only stand on claim (1) for infringement. This he concedes. The district court found that Muench-Kreuzer's Make-a-Rainbow under the modified method—colors around the slender taper instead of the wick— did infringe, as well as holding the whole patent valid with the consequent infringement of Muench-Kreuzer prior to September, 1952, when Make-a-Rainbow was essentially a Chinese copy of Wilson's Magi-Color. The usual injunction and accounting were decreed.

■ On this appeal, according to our analysis, the judgment must be reversed and the Wilson patent declared invalid. After making due allowance for the proposition that all inventions once achieved are obvious once one understands the field and for the corollary that such "after-seen" obviousness does not blight patentability if the inventor really has something new, we believe that there is

5. What Wilson meant by "normally undissolved in the wax of said body" is a matter of some uncertainty. It would appear that his dye was ordinarily highly concentrated in a "wax." This wax perhaps had a higher boiling point than the regular candle stock or body wax with which the candle was built up. Strictly, a candle has apparently always consisted of two parts—the body and the wick. Thus, anything not in the wick ought to be considered body. But Wilson apparently in his mind excluded his aniline-in-wax, i. e. his mother color, from the term: body. What would he have meant by "abnormally dissolved?" This an-

tithesis in his mind was probably the occurrence of bleeding. If he had thought of the eventual tactic that Muench-Kreuzer took to circumvent him, he probably would have thought that his claim covered the placing of the bands of color at an intermediate point as well as along the wick. Appellant has a very good argument that Wilson on this point is bound by file wrapper estoppel. Also, appellant thinks the natural construction of the quoted phrase limits the color to in or about the wick. What the words "normally undissolved in the wax of the body" mean is not herein decided.

too little that is really new in Magi-Color to protect it.

Our reasoning is as follows:

1. Aniline dyes of one kind or another have been used commercially for over a hundred years. The Sterry British patent of 1871, a patent designed only to improve the color of a candle made with cheap paraffine,[6] speaks, in effect, of secreting aniline color in so much of the wick as is embedded within the wax, leaving the white ends of the wick exposed.

2. It is the experience of children to stick a colored candle on top of one of another color, perhaps even to get successively colored drippings on a bottle, a bottle being a candle holder of some antiquity. It may be assumed that putting a string of differently colored candles end to end on one wick would not be startling or considered a discovery or invention.

3. Closely related to (2) above, is the old practice, particularly in candles for Christmas, of making a candle with two colors, say a white core and a red jacket. This practice is surely in the public domain. Then if we follow the pattern of (2) above, put one short colored candle after another, vary the colors, on top of each other by the use of one wick, then put on a single colored jacket, we haven't arrested the thought of any candle maker or produced anything worthy of a patent.

4. Here in the Wilson Magi-Color candle we have someone for the first time who wants to market a candle with the element of surprise in the succession of colored drippings. This is achieved by hiding the aniline in concentrated form (mother color) in successive segments of the wick, by putting it concentrated in colors around the wick as Wilson does, or by putting it in bands around the thin taper as Muench-Kreuzer now does.

5. There is some validity to appellee's argument that if we detour through the patents on surprise packages of successively colored flames in candles,[7] then in that "prior art," appellee has the better of the argument. We do not believe that these colored flame patents necessarily pointed the way to the Jacob's coat in colored drippings.[8]

In sum, it is our judgment that the decision of the trial court on the evidence wherein it found invention in the Wilson patent was clearly erroneous.[9] Were it not for a number of Supreme Court cases which of recent years have tightened up the standards of patentability, we might hold otherwise.[10] We think there was no invention when appellant moved the collars of dye a little towards the outside shell of the candle and away from the wick. It is our best judgment that there was but little more original thinking in putting the collars in the wick or immediately around it.

6. The color in the wick by light diffusion (apparently no migration of dye was involved) gave a different cast to the whole candle when viewed from without.

7. The execution of candles with colored or successively colored flames has never reached a state of high perfection. A metallic salt, there are many, is the key to coloring a flame different than the normal yellow. To get brilliant colors from these salts a hotter candle would be required than anyone wants to burn around a house. Also, there is a problem of clinkers forming as the candle burns.

8. Appellant has used one or two colored metallic salts in coloring the drip of candles. Only a few, particularly one or two in the copper family, are suitable to color drip. The home of the metallic salts is in the field of colored flames. (No opinion is expressed here on the validity of the colored flame patents.)

9. There was very little, if any, conflict in the evidence. In this record, we have everything the district court had except the demeanor of the witnesses and what the district judge saw when some of the candles were burned. As the issues shaped up, we think that demeanor of witnesses and the burning demonstrations are unimportant to decision.

10. Mandel Brothers, Inc., v. Wallace, 335 U.S. 291, 69 S.Ct. 73, 93 L.Ed. 12; General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, 66 S.Ct. 81, 90 L.Ed. 43; Sinclair & Carroll Co., Inc., v. Interchemical Corp., 325 U.S. 327, 65 S. Ct. 1143, 89 L.Ed. 1644; Cuno Engineering Corp., v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58.

We think that Muench-Kreuzer with its unpatented Star-Pillar candle [11] had excellent commercial vision. And soon thereafter Wilson had similar commercial judgment, when he foresaw that a surprise candle like his Magi-Color would sell in the current fashions of the candle market. Both had business daring. It seems clear enough that Muench-Kreuzer took from Wilson what he had, but we have come to the conclusion that what Wilson had was in the public domain.

Judgment reversed.

11. Muench-Kreuzer Star Pillar was first marketed in 1940. It is a dripper and had contrast. A cross section of it shows five points. In the center the candle was the usual wick and is surrounded by candle stock of a selected color, an ordinary candle having been made. But then instead of a plain jacket of contrasting color, a five-flanged jacket of a different color has been built around it; thus, the five pointed star. When burning, the drippings from the core run down the valleys formed by the flanges, making a sharp contrast with the outside wax.