**DEERING MILLIKEN RESEARCH CORPORATION, Plaintiff.**

v.

**BEAUNIT CORPORATION, Defendant.**

**Civ. A. ST–C–72–10.**

United States District Court,
W. D. North Carolina,
Statesville Division.

April 16, 1974.

Davidson C. Miller, Roger W. Parkhurst, Stevens, Davis, Miller & Mosher, Arlington, Va., J. Carlton Fleming, A. Ward McKeithen, Fleming, Robinson & Bradshaw, Charlotte, N. C., for plaintiff.

B. B. Olive, Durham, N. C., H. Grady Barnhill, Jr., Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., for defendant; Donald E. Gillespie, Beaunit Corporation, Research Triangle Park, N. C., of counsel.

## MEMORANDUM OF DECISION

WOODROW WILSON JONES, Chief Judge.

The plaintiff, Deering Milliken Research Corporation, (*Milliken*), a South Carolina corporation with its principal office located at Spartanburg, South Carolina, brings this patent infringement action against the defendant, Beaunit Corporation, (*Beaunit*), a New York corporation with a manufacturing plant located at Statesville, which is within the Western District of North Carolina, seeking injunctive relief from future infringement and an accounting of damages and profits made from past infringement.

The defendant admits the issuance of the Patent but denies title, validity, and infringement, and alleges misuse.

The issues were tried by the Court, without a jury, at the February, 1974 Term at Statesville, and the Court now enters its findings and conclusions.

On January 5, 1971, the United States Patent Office issued to *Milliken* as assignee of Bascum G. Lesley, Letters Patent No. 3,552,154 based on application serial No. 815,572 filed April 14, 1969. The application disclosed a textile knit fabric invented by Bascum G. Lesley, Pickens, South Carolina, who on April 10, 1969 executed a paper-writing under his hand and seal assigning to *Milliken* his entire right, title and interest in and to such invention or improvements and the application for a patent. A certificate of acknowledgment under the hand and official seal of a notary public of South Carolina was affixed to the assignment and the document was thereafter accepted, filed and recorded in the Patent Office. Such assignment meets the requirements of 35 U.S.C.A. § 261, and *Milliken* is the owner of Letters Patent No. 3,552,154 and is entitled to bring this action for its infringement.

The invention in question relates to a novel textile knit fabric and, more particularly, to a warp knit fabric construction employed in the production of elastic fabrics composed of elastic and inelastic thread components. Such fabric is widely used in the manufacture of support garments, such as girdles, corsets, brassieres, and the like, as well as outer garments which are designed to closely conform to the body of the wearer and to stretch with the various movements of the body.

The patent discloses an elastic warp knit fabric comprising a ground construction composed of inelastic threads knitted in a plurality of courses and wales of single thread stitches, and elastic threads inlaid between the wales and extending generally parallel thereto.

The inventor recognized in his statement of specifications that, prior to his invention, textile warp knit elastic fabrics composed of elastic and inelastic thread components were widely used in the manufacture of support garments as well as outer garments which were designed to closely conform to the body of the wearer. Among these elastic fabrics were the so-called "powernet" types which were open mesh or net fabrics wherein the inelastic threads were knitted into a ground support construction and the elastic threads were inlaid or formed in stitches therewith to provide an open knit elastic fabric having high stretch recovery in one or more directions, depending upon the disposition of the elastic threads in the fabric. These powernet fabrics possessed certain drawbacks in that their open mesh construction made them quite transparent, so that portions of the body or undergarments were visible through the fabric.

To avoid the transparent or "see-through" quality in garments made from elastic powernet fabrics the textile industry designed and produced an elastic fabric of solid or opaque construction. This fabric was generally made by knitting in both elastic and inelastic threads into the fabric construction, with the inelastic threads knitted in a double thread stitch arrangement to facilitate cover and to obtain the desired opaqueness necessary to avoid "see-through" in garments made from such fabric. This opaque elastic fabric construction required greater quantities of yarn, and particularly more of the expensive elastic yarns, thereby increasing the weight and cost of the fabric.

The inventor declares that it is an object of his invention to provide a solid, opaque, warp knitted elastic fabric containing elastic and inelastic threads which is of light weight construction and is more economical to produce than such knit fabrics of the prior art. This and other objects of the invention are accomplished by providing a warp knitted elastic fabric having, in combination, a ground construction composed of a plurality of pairs of inelastic threads, one set of warp threads of the pairs forming stitches in alternate courses and adjacent wales, and the other set forming stitches in alternate courses and non-adjacent wales to produce single-thread stitches throughout the construction, and elastic threads laid in the ground construction generally parallel to and between the wales of the fabric and covered by lap portions of certain of the inelastic threads to effectively hide the elastic threads and prevent undesirable "grin-through" of the threads in the fabric. The resulting opaque elastic fabric has high stretch recovery and is appreciably more economical to produce than the solid elastic knit fabrics of the prior art, due to the ability to employ much less yarn in the fabrics both by laying in the elastic yarns in a generally straight line arrangement and utilizing relatively heavy, inexpensive inelastic threads in a single thread stitch disposition to cover and contain the elastic yarns throughout the fabric.

Since stresses are constantly exerted on support and closely fitting garments it becomes important and desirable to construct a fabric which will resist "splitting" or "parting" which readily occurs in fabrics knit in the conventional manner. The inventor claims that an

object of the invention is to prevent such splitting or parting by knitting the inelastic ground construction of the warp knitted elastic fabrics by employing separate guide bars for the two inelastic thread sets, composing the plurality of pairs of inelastic threads, with each set being fed into the knitting needles from the guide bars so that the thread sets alternate in the formation of stitches in courses to provide single thread stitches throughout the fabric. In addition, one guide bar may be shogged over at least one wale between the formation of stitches during the knitting operation to produce unknitted thread floats tying non-adjacent wales of the fabric together, as well as providing additional cover in the fabric. By connecting non-adjacent wales in this manner, if a thread breaks in the ground construction, the fabric may run but will not readily split apart, as would be the case if such a single-thread stitch ground construction was knit employing a single guide bar.

Another object of the invention was to avoid an undesirable "grin-through" or showing of the elastic or rubber yarns when the fabric is stretched. This is accomplished by maintaining the elastic threads of the fabric between the wales of the fabric and inlaying the same by wrapping the lap portions of the stitches formed by one thread set of the thread pairs about the elastic yarns, so that the inlaid elastic yarns can be effectively covered by the ground construction. This permits the use of bare spandex or rubber yarns for economy and maximum stretch recovery which are substantially fully covered by the ground construction so that they are hidden from view to provide a smoother, more aesthetically attractive fabric.

The patent teaches that the relatively inelastic threads forming the ground construction of the invention may be composed of any man-made or natural continuous filament or spun yarns of relatively inelastic nature, while the elastic threads may be composed of rubber, spandex, or other man-made yarns having a high modulus of elasticity or stretch recovery. Typical of the yarns which may be used in forming such fabrics are nylon and Lycra.

The inventor advanced the following five claims:

1. A warp knitted elastic fabric having, in combination, a knitted ground construction composed of a plurality of pairs of inelastic warp threads formed into a plurality of wales and courses composed of single thread stitches, one thread of each of said pairs forming stitches in adjacent wales and alternate courses, the other thread of each of said pairs forming stitches in non-adjacent wales and alternate courses, and a plurality of elastic threads extending between the wales and generally parallel thereto and being inlaid in the ground construction with an inelastic warp thread of said ground construction wrapped about each of said elastic threads to maintain the same in the ground construction.

2. An elastic fabric as defined in claim 1 wherein lap portions of the stitches of said one thread of each of said pairs of threads is wrapped about said elastic thread to substantially cover and inlay the same in the fabric.

3. An elastic fabric as defined in claim 2 wherein said other thread of each of said pairs of threads has unknitted thread sections extending across at least one wale between stitches.

4. An elastic fabric as defined in claim 1 wherein the stitches of said one thread of each of said pairs are generally horizontally disposed throughout said fabric, and the stitches of said other thread of each of said pairs of threads are generally vertically disposed throughout the fabric.

5. A warp knitted elastic fabric as defined in claim 1 wherein said one thread of each of said pairs form said stitches by the bar movement pattern 2-0, 2-2, 2-4, 2-2, said other thread of each of said pairs form said stitches by the bar movement pattern 4-4, 4-6, 4-4, 2-0, and said plurality of elastic threads are inlaid by the bar movement pattern

0–0, 2–2, 4–4, 2–2, said movement patterns being Raschel designations.

■ The defendant alleges certain deficiencies in the specification and claims of the Lesley patent. 35 U.S.C.A. § 112 requires that the specification of a patent be stated in such a manner as to enable one skilled in the art to which it pertains to make and use the claimed invention. Here, once the skilled artisan is given the stitch pattern and the fact that two groups of inelastic (nylon) threads and one group of elastic spandex threads are used to make the fabric, he is enabled to make said fabric, and that part of the statute is complied with. If the specification enables the making of the fabric the presence of minor errors in said specification does not detract from its compliance with the statute. None of the expert witnesses had any difficulty recognizing the fabric described in the specification and in Figure 2 of the patent as the same fabric produced by Deering Milliken, Inc., and the defendant.

■ The other requirement of Section 112 is that the claim particularly point out and distinctly claim the invention. The Examiner (whose duty it was to examine the application under Section 112) found the claims to comply with the statute. Dr. Brown, plaintiff's expert witness, clearly understood the claims, and Mr. Titone, one of defendant's expert witnesses, had no great problem with the claims. Mr. Hudson, the defendant's other expert witness, testified that the claims were unclear. However, he had no difficulty in characterizing the claimed invention as being obvious. It is somewhat difficult to comprehend how he could find the invention to be obvious if he didn't understand the claims.

■ This patent is presumed to be valid and the burden of establishing invalidity rests upon the defendant. 35 U.S.C.A. § 282. In an effort to overcome this presumption of validity the defendant has advanced the following contentions: (1) the Examiner made a mistake during the prosecution of the patent application, and (2) that better prior art was in existence than was cited by the Examiner.

Plaintiff's Exhibit 3, the file wrapper of the patent in suit, reveals that the application as originally filed contained four claims. Claim 1 was an independent claim and Claims 2, 3 and 4 appear in the patent in the same language as they appeared in the application. These claims were acted upon by the Examiner in an Office Action dated November 21, 1969 and in the Summary of Action he stated that all four of the claims would be allowed if amended as indicated, and that Claim 1 was rejected.

Only Claim 1 was rejected as unpatentable over *Auville* 3,442,099 in view of *Cooper* 471,350 under 35 U.S.C.A. § 103. However, in the same action the Examiner employed the following language:

"The Examiner notes that this application contains allowable subject matter. The claims would be allowed if a more detailed and meaningful recitation of stitch structure involving the elastic threads and threads B, are set forth in the base claim."

It is clear that "base claim" meant the independent Claim No. 1. The applicant amended Claim 1 by adding the following language:

" * * * With an inelastic warp thread of said ground construction wrapped about each of said elastic threads to maintain the same in the ground construction."

After the addition of that language, the claim was allowed and it appears as Claim 1 in the patent.

Because Claim 1 and Claim 4 which depends upon it did not, as originally filed, contain the language respecting the wrapping of the warp threads about the elastic threads, the defendant contends the Examiner erred in his interpretation of *Cooper*. The defendant states that *Cooper* shows in Figure 3 of his drawing a fabric in which "the warp knitting threads (k), and the portions of the latter extended between the lines of

*loops* will have the appearance of being wrapped around strands (e) and (h) . . . ." The defendant's theory is that adding to one's claim something taken from the prior art would not make the claim patentable.

██ It appears that the defendant relies upon the drawings and the fragment of language mentioned above and not upon the document as a whole. Incidental bits of disclosure taken from the prior art which does not as a whole, teach the conception of the patent sought to be anticipated are not a proper basis for anticipation. See In Re Cramblet, 62 F.2d 358 (C.C.P.A.1932); Trussell Manufacturing Co. v. Wilson-Jones Company, 50 F.2d 1027 (2nd Cir. 1931); Brill v. Third Ave. R. Co., 103 F. 289 (S.D.N.Y.1900).

It is clear that from an examination of *Cooper* as a whole he had no conception of a wrap around for cover purposes and from the drawings alone it is not possible to identify which yarns are elastic and which are not. Indeed from the drawing alone *Cooper* might be supposed to disclose a form of fish net. It therefore appears that the Examiner considered the whole *Cooper* disclosure including the other *Cooper* patent to which the cited *Cooper* patent refers. From this whole disclosure a picture emerges quite different from that painted by the defendant.

*Cooper* read as a whole does not disclose the concept embodied in *Lesley*. The fabric disclosed by *Cooper* is a one-way stretch fabric having elasticity only in the direction of the wales, while the *Lesley* disclosure, teaches a construction which inherently has a two-way stretch. It was not error for the Examiner to consider that *Cooper* lacked relevance to the *Lesley* disclosure in view of the fact that it shows a fabric elastic only in the length thereof and not in the width.

In so far as Claim 2 is concerned, *Cooper,* in unequivocal language, states that he does not use the warp threads (k) as cover which is directly contrary to the wording of the *Lesley* Claim 2.

It is certainly no indication of error that an Examiner would allow a claim which directly specifies something quite contrary to that which the prior art shows.

██ *Cooper* teaches that it is necessary to have an extra, a fourth, yarn for cover, it being established that bare rubber and bare spandex are unacceptable for wear next to the skin. *Lesley* Claim 2 provides for the elimination of that extra yarn for cover purposes and leads to a classic patentability situation that a machine or article that is made with fewer parts or fewer components than the prior art, but which accomplishes all of the functions of the prior art, is the type of improvement which merits a patent. In Glade v. Walgreen Co., 122 F.2d 306 (7th Cir. 1941), cert. denied 314 U. S. 692, 62 S.Ct. 362, 86 L.Ed. 553, the court said, at 122 F.2d Page 309:

"We find nothing in the statute, or in the decisions cited, which would preclude plaintiff from receiving a patent for a combination, even though it produced the same result as other such devices, if it produced that result with fewer elements that had theretofore been used or thought necessary. This is precisely what plaintiff did. Theretofore others had produced the same general result with five or more elements, whereas plaintiff produced the same general result more efficiently with three elements. It is not fair to say that Martin uses the same old elements as those before him, for there are at least two of the old elements used in prior devices which Martin does not use at all. In other words, he produces the same result in a more efficient and facile manner by making three of those old elements accomplish the same general result as five or more had theretofore done."

Since Claim 3 depends upon Claim 2, the foregoing findings are equally applicable to it. The evidence and the Patent Office record indicate that the Examiner properly applied the *Cooper* reference so that the presumption of validity which normally attaches is not overcome

by any inference of error on the part of the Examiner.

In addition to the alleged error of the Examiner *Beaunit* contends that the presumption of validity is lost because prior art, better than the art before the Examiner, was presented to the Court during the trial of the case. In order to overcome the presumption of validity *Beaunit* has the burden of establishing that other art which is cited is truly more relevant to the patent claims than the art which the Examiner considered. *Beaunit* cites and relies upon a number of patents, prior art designs and publications in an effort to overcome the presumption. Mr. Titone, defendant's expert witness, described a fabric which had been made from some notes appearing in a notebook belonging to his father, dated November 28, 1941 and referred to as Nedich Celustra Style 5427. When asked by *Milliken's* attorney which of the prior art he considered more relevant than the combination of *Cooper* with *Auville*, his answer in substance was that the *Decker* patent had not been cited and that the Nedich Celustra Fabric Style No. 5427 might be considered as an embodiment of the combination of *Auville* with *Cooper*.

■ The *Lesley* file wrapper shows that the Examiner searched Class 66, Subclasses 190 to 195 and 169 to 171, and the record shows that Decker was in Subclass 193 at the time the search was made. Courts have generally held that such a search record is a *prima facie* indication that the patent was considered by the Examiner and not regarded as of sufficient importance to cite. In Harris-Hub Co., Inc. v. Lear Siegler, Inc., 179 U.S.P.Q. 469 (N.D.Ill.1973), the Court said at Page 475:

> "The presumption of validity is still further strengthened here because the examiner searched in the same class and subclass in which the Thirlwall patent relied on by Defendant is classified; under such circumstances, it is presumed that the Patent Office considered the Thirlwall patent and dis-

carded it. Uarco v. Moore Business Forms, supra at p. 585; 169 USPQ at 267; Stuart W. Johnson & Co. v. Ro-Ber, supra at pp. 181 & 183; King-Seeley Thermos Co. v. Tastee Freez Industries, supra at p. 600."

The Court finds that to make the claims of *Lesley* read on Nedich Celustra Style 5427 it is necessary to change the construction of the fabric to alter the interrelation of the yarns in a manner which is not suggested in the notebook from which it was taken. If the third bar of the disclosure were used as the notebook teaches, the *Lesley* claims would not read on the resulting fabric because there would be double thread stitches where the *Lesley* claims require single thread stitches. The *Lesley* claims would not read on any portion of the length of Style 5427 if it were made according to the notebook. No modification of the fabric is taught or suggested in the notebook from which it was taken. The fabric, according to *Beaunit's* expert, contains the entire *Lesley* fabric for if one knits the first, second and fourth bars of the fabric, omitting the third bar, and if one knits four courses selected from twelve, omitting eight courses of the twelve, one can create a fabric in 1974 very similar to the *Lesley* fabric.

This contention runs afoul of the doctrine recognized in Spring Cotton Mills v. Hall Laboratories, 208 F.2d 500 (4th Cir. 1953) and Skelly Oil Co. v. Universal Oil Products Co., 31 F.2d 427 (3rd Cir. 1929) but perhaps more fully stated in the British case of Minnesota Mining and Manufacturing Co. v. Bondina, Ltd., reported in 1973 R.P.C. 491, at page 530, as follows:

> "Four expert witnesses were examined and cross-examined at length on the details of the experiments, which accounted for a large proportion of the time occupied by the evidence, and it is regrettable that, as the hearing proceeded, it became clear that the legal foundation of the most significant parts of the experiments was erroneous. In any event, they resulted in

nothing more than confusion between the issues of anticipation, to which they were ostensibly directed, and the issue of obviousness, which cannot possibly be decided by experiments that merely beg the question by making additions to or changes in the instructions given by the prior document, designed to assimilate it to the patent in suit without considering whether they are obvious or not."

Dr. Brown, *Milliken's* expert, testified that the presence of the third bar yarns in Style 5427 take it outside of the *Lesley* patent and render it a fabric of quite different character from the fabrics made according to the *Lesley* patent.

The Court finds that the evidence does not establish that a fabric made according to Nedich Celustra Style 5427 or according to any other style of Nedich Celustra group was known, described in a printed publication, in public use, reduced to practice or conceived and reduced to practice as those expressions are used in 35 U.S.C.A. § 102. In fact there is considerable doubt that such fabric was ever sold since the defendant relies upon oral testimony of incidents occurring many years ago. This places an unusual burden on the defendant as stated in Deering v. The Winona Harvester Works, 155 U.S. 286, at pages 300–301, 15 S.Ct. 118 at 123, 39 L.Ed. 153 (1894):

"As we have had occasion before to observe, oral testimony, unsupported by patents or exhibits, tending to show prior use of a device regularly patented, is, in the nature of the case, open to grave suspicion. (Washburn & M. Mfg. Co. v. Beat 'Em All Barbed Wire Co) The Barbed Wire Patent, 143 U.S. 275 [36:154]. Granting the witnesses to be of the highest character and never so conscientious in their desire to tell only the truth, the possibility of their being mistaken as to the exact device used, which, though bearing a general resemblance to the one patented, may differ from it in the very particular which makes it patentable, is such as to render oral testimony peculiarly untrustworthy; particularly so if the testimony be taken after the lapse of years from the time the alleged anticipating device was used."

The Court finds that the concept of the *Lesley* patent, that is, the particular combination of stitches and the particular combination of elastic and inelastic yarns therein is not to be found in any prior art in evidence in this case. There is no evidence of use, knowledge, sale or prior invention of any fabric conforming to the terms of any of Claims 1 to 5 of the patent taking place before October 1968.

■ It is apparent that there is no justification for loss of presumption based upon either an error by the Examiner in considering *Cooper* or on the basis that the prior art known to the Examiner was less pertinent than other prior art cited and relied upon by the defendant during the trial.

The defendant contends that the subject matter as a whole would have been obvious at the time of the invention to a person having ordinary skill in the art and the patent is therefore invalid under 35 U.S.C.A. § 103. The expert witnesses disagree on this subject. *Beaunit* called two experts who testified that the results reached by *Lesley* were obvious to one skilled in the art, while *Milliken's* expert witness, Dr. Brown, and the Patent Examiner, Mr. Feldbaum, say otherwise. This opinion evidence must be considered in light of all the other evidence in the case, and the Court must determine the credibility or reliability of such evidence. *Milliken's* expert and the Examiner are in agreement with each other and examined the art as it was at the time, not as it might be with certain changes.

■ The mere fact that an invention may seem simple and clear after it is explained or that the inventive concept is carried out by individual elements known in the art does not make it obvious. In Manville Boiler Co. v. Columbia Boiler Co. of Pottstown, 269 F.2d

600 (4th Cir. 1959), cert. denied 361 U. S. 901, 80 S.Ct. 208, 4 L.Ed.2d 156 (1959), the Court stated, 269 F.2d at page 604:

"After Mandleburg pointed the way, the solution may seem simple and obvious, but it hardly can be said to have been obvious in a legal sense when Columbia's skilled craftsmen could not provide the answer, though the desirability of improvement had been recognized for many years. As Judge Soboloff said in S. H. Kress & Company v. Aghnides, 4 Cir., 246 F.2d 718, 723:

'The usual defense that the result would have been obvious to one skilled in the art cannot avail the defendant here. Obviousness does not mean that one skilled in the art can perceive the solution after it has been found and pointed out by someone else; the test of obviousness is as of an earlier time, when the search is on. . . .'

Numerous cases give expression to the principle. Goodyear Tire & Rubber Co., Inc. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721; Merck & Co. Inc. v. Olin Mathieson Chemical Corporation, 4 Cir., 253 F.2d 156; Otto v. Koppers Company, Inc., 4 Cir., 246 F.2d 789; Emerson v. National Cylinder Gas Company, 1 Cir., 251 F.2d 152; Muench-Kreuzer Candle Co. Inc. v. Wilson, 9 Cir., 246 F.2d 624; L-O-F Glass Fibers Company v. Watson, 97 U.S.App.D.C. 69, 228 F.2d 40."

Furthermore, in Otto v. Koppers Company, 246 F.2d 789 (4th Cir. 1957), cert. denied 355 U.S. 939, 78 S.Ct. 427, 2 L.Ed.2d 420 (1958), 246 F.2d at 800 the Court stated:

"Otto does not claim that his invention embodies any new discovery of chemical principles. *His is a combination patent, each individual element of which was known in the art, but the combination and its concept were new, producing clearly improved results.* What has been said above of the work of many skilled chemical engineers in the field, the impact of this patent upon the industry and the defendants' prompt adoption of the patented apparatus demonstrates its merit and utility and forecloses the suggestion that the combination was obvious to others working in the field. The oft quoted statement of Judge Hough in Kurtz v. Belle Hat Lining Co., 2 Cir., 280 F. 277, 281 is appropriate here:

'The imitation of a thing patented by a defendant who denies invention, has often been regarded, perhaps especially in this circuit, as conclusive evidence of what the defendant thinks of the patent, and persuasive of what the rest of the world ought to think.'

a principle well recognized in this Circuit. Ackermans v. General Motors Corp., 4 Cir., 202 F.2d 642; Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp., 4 Cir., 40 F.2d 910.

Revolutions, even in one branch of an industry, are infrequently the product of old ideas. Particularly in a field in which highly trained and skillful engineers were working, on various approaches, to achieve the result, the imitators can hardly be heard to say they knew all the while that the answer lay in the concept which, upon its disclosure, made their own work obsolete. *This Court, under these circumstances, cannot find the concept wanting in inventive novelty."* (Emphasis added.)

The evidence establishes, without doubt, that the fabric made from the patent in question has been a commercial success. Witnesses described the sales of the fabric by licensees, Deering Milliken, Inc. and J. P. Stevens Company. By stipulation, notes of the sales of the fabric by the defendant were given to the Court at the end of the trial. With a knitting machine capable of producing thousands of different fabrics, it is hard to believe that the particular

fabric here claimed is obvious or equivalent to fabric heretofore known. Whatever may be the opinion of *Beaunit's* experts respecting equivalency to prior art it is evident that the buying public can see enough difference between the fabric made under *Lesley* and the prior art to make this invention a commercial success in what had been before its creation a declining market. See Otto v. Koppers Company, *supra*.

■ The Court finds that the subject matter as a whole would not have been obvious at the time the invention was made to those having ordinary skill in the art.

■ The evidence clearly establishes that *Beaunit's* "Sensua" fabrics infringe the claims of *Lesley* Patent 3,552,154. The uncontradicted testimony of Dr. Brown and the defendant's own admission that it copied the *Lesley* fabric conclusively prove such infringement.

Mr. Lesley designed a novel textile knit fabric which filled a great need in the industry and met with instant commercial success. The fabric was smooth, opaque, light in weight, split resistant, possessed unusual stretch qualities and used much less yarn making it economic to produce. It was ideal for the construction of foundation and outer garments which conform to the body, such as girdles, brassieres, corsets, swimsuits, etc. The fabric was so successful in the market place that the defendant's sales representative in New York wired the manager of its plant in Statesville, North Carolina, to the effect that the fabric was the hottest single item in the industry and forwarded a sample of the fabric for copying. The defendant copied the fabric and put it in production. It is continuing to produce the fabric at its Statesville plant and to market it under its "Sensua" line of fabrics represented by the style numbers of S 6000 series. The stipulated figures given to the Court indicate that the "Sensua"

fabric has become an important part of the elastic fabric business of the defendant.

*Milliken* offered *Beaunit* a license under the *Lesley* patent at the institution of this action but such offer was declined. *Beaunit* continues to manufacture and sell the fabric. The defendant's actions are clear and ". . . whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent." 35 U.S.C.A. 271.

*Beaunit* has raised numerous other defenses some of which were not even discussed or mentioned at the trial. The Court has examined these defenses and finds them to be without merit.

By way of summary, the Court concludes that *Milliken* is the owner of Patent 3,552,154 and has a right to sue infringers thereof. The assignment executed by the inventor and filed with the Patent Office is in compliance with the statute and is *prima facie* evidence of the assignment, grant and conveyance of the patent and the application. 35 U.S. C.A. § 261. The defendant has offered no credible evidence sufficient to overcome the *prima facie* case.

■ Patent No. 3,552,154 was duly and legally issued by the Patent Office on January 5, 1971 to *Milliken* as assignee of Bascum G. Lesley and the specification and claims meet the requirements of 35 U.S.C.A. § 112. The patent, therefore, is entitled to the statutory presumption of validity decreed by the Congress in 35 U.S.C.A. § 282. By law the Patent Office is charged with the duty and responsibility of passing upon the patentability of all inventions and its action should not be treated lightly by the courts. This presumption is a positive factor and can be overcome by the defendant only by clear and cogent evidence. This heavy burden has not been met by the defendant here.

■ A piece of prior art must be read as a whole to rely on its teachings under either 35 U.S.C.A. §§ 102 or 103, and statements in such prior art which are so obscure that two conflicting theories may be deduced by experts as to that teaching and supported by equally plausible arguments are too indefinite to be utilized as an anticipation. In Lever Bros. Co. v. Procter & Gamble Mfg. Co., 139 F.2d 633 (4th Cir. 1943), at page 641, the court said:

"A document so obscure in its terminology that two conflicting theories may be deduced therefrom and supported by equally plausible arguments is too indefinite to be utilized as an anticipation."

In Hillard v. Fisher Book Typewriter Co., 159 F. 439 (2nd Cir. 1908), cert. denied 208 U.S. 617, 28 S.Ct. 569, 52 L.Ed. 647, the court said, 159 F. at page 441:

"Statements in a prior application relied on to prove anticipation must be so clear and explicit that those skilled in the art will have no difficulty in ascertaining their meaning. Where they are so vague, involved, intricate and contradictory that experts disagree radically as to their meaning and, following the instructions given, construct devices differing in fundamental features, it is safe to reject such a document as an anticipation."

Thus, whether the Examiner found the Cooper patent as a whole to be clear, or whether he found it confusing, his action was in all respects correct.

A modification of a piece of prior art which is not taught by that piece of prior art cannot be relied on under either 35 U.S.C.A. §§ 102 or 103, and no modification of the Nedich Celustra Fabric Style 5427 is taught or suggested in the record book from which it was taken. A fabric made from the record book without change would be quite a different fabric from one made under the Lesley patent.

■ The presumption arises that the Examiner considered and rejected the Decker patent since it was classified in a subclass which he checked even though the patent is not cited as a part of the prior art. Harris-Hub Co., Inc. v. Lear Siegler, Inc., supra.

■ Where the prior art fails to disclose the inventive concept of the patent in suit, it is immaterial to the validity of such patent that once the concept is known one skilled in the art could readily understand it, or with slight or no difficulty build the invention by means well known in the art. The mere availability of the techniques needed to practice the invention does not negate validity under 35 U.S.C.A. § 103 where the conception is missing from the prior art teachings.

■ Commercial success and copying by the defendant are evidence indicative of non-obviousness of plaintiff's patented invention as well as the age and the large volume of cited prior art by the defendant.

The Court concludes that the Lesley Patent 3,552,154 and all of its five (5) claims are valid and that the defendant's "Sensua" Fabric Series 6000 infringes all five (5) of the claims of said patent. The Court further concludes that the defendant's accused fabrics were produced at its Statesville, North Carolina plant which is located within the Western District of North Carolina. An order declaring the plaintiff's patent valid and infringed by the defendant will be prepared and submitted to the Court forthwith. The Court will schedule a trial on the other issues at an early date.