35 C.C.P.A. (Patents)

### Application of METZNER.
### Patent Appeal No. 5359.

Court of Customs and Patent Appeals.
Nov. 29, 1947.

Marston Allen, of Cincinnati, Ohio (Theodore Greve, of Cincinnati, Ohio, of counsel), for appellant.

W. W. Cochran, of Washington, D. C., (J. Schimmel, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office rejected as unpatentable over certain prior art patents claims 1 to 20, inclusive (being all the claims in the application and all the claims on appeal here), of appellant's application for a patent relating to strip feeding means for writing and imprinting apparatus.

Appellant's invention involves an improvement in the feeding mechanism for the proper passage of punctured paper strips through a paper feeding, record making device. The invention is described by the examiner as follows:

"The alleged invention relates to feeding units comprising a series of traveling pins or sprocket teeth mounted for both outward radial movement and movement normal to their path of travel, or for movement normal to their path of travel only for engaging marginal perforations in a continuous record receiving strip or a series of superposed record receiving strips and advancing them to a record receiving position or station. Movement of the pins or teeth normal to their path of travel is provided for the purpose of compensating for lateral expansion or contraction of the strip material due to variable atmospheric conditions or to inequalities in the manufacture of the marginally perforated strips."

It is pointed out by appellant that the twenty claims on appeal fall into three groups, claims 15, 6 and 7 being set forth in his brief as representative of each of the different groups. Appellant states that the combination defined by claim 15

provides for an arrangement whereby the individual pins "independently" of each other are "free" to move "laterally," that claim 7 calls for "elongated" slots in the margins of the paper and for "flat pins," and that claim 6 is modified by the addition of the feature that the feeding pins are also mounted for "radial" movement with reference to the pin carrier.

The Solicitor for the Patent Office states that the claims may be broadly divided into two groups, the first, consisting of claims 3, 4, 10 to 13, inclusive, and 15 to 20, inclusive, being directed to feeding pins laterally shiftable independently of each other, and the second, consisting of claims 1, 2, 5 to 9, inclusive, and 14, being drawn to cover the use of flat feeding pins.

With the above explanation, we regard claims 3 and 6 as illustrative of the appealed subject matter and they follow:

"3. In a pin type feeding means for advancing a continuous strip of material having therein a succession of longitudinally spaced holes for engagement therein of traveling feeding pins, a traveling carrier, a series of spaced feeding pins mounted thereon for to and fro lateral motion transversely to their path of travel independently of each other and the carrier into agreement with succeeding holes in the strip simultaneously with their unison advancement by the travel of the carrier."

"6. In a record making apparatus wherein continuous relatively adjustable superposed record strips each having a succession of longitudinally spaced record receiving areas are progressively aligned and registered at a record receiving position with like areas of another of the strips, and wherein each strip has therein a succession of longitudinally spaced elongated slots for progressive engagement of the strips with a series of traveling flat feeding pins by which the strips are advanced past a record receiving position, including a traveling series of relatively spaced flat pins engageable in corresponding narrow elongated slots in the strips for advancing the strips in unison with their travel motion and a carrier for said pins

upon which the pins are mounted for limited individual lateral adjustment relative to the carrier by camming action of the teeth and strips as the teeth enter the slots thereof."

The references cited by the Patent Office tribunals in rejecting the appealed claims are as follows:

Neth, 1,490,536, April 15, 1924.
Sherman, 2,000,649, May 7, 1935.
Sherman et al., 2,102,651, Dec. 21, 1937.
Ross, 2,118,016, May 17, 1938.

While there are two embodiments of the invention disclosed in appellant's application as defined by the appealed claims, it is our view that if any of the claims are allowable they are all allowable although there is a greater number of claims than is ordinarily presented under such circumstances.

It is explained in appellant's application that the expansion and contraction of paper strips which are employed for record purposes presents a troublesome problem. The strips are ordinarily accompanied by carbon paper, are sometimes of considerable width, and are used in tabulating and computing machines, addressographs, and other imprinting apparatus. It is pointed out that such expansion or contraction makes the pre-prepared holes in the paper come out of line, and, when passing over the feeding drum, the paper is frequently torn or disfigured by the pins on the drum.

The chief feature of appellant's invention is to make the pins on his drums have a floating or pivotal action so that they will fall into the holes in the paper and move the paper forward without disfiguring it, whereas if the pins are stationary or if they move only forward in the direction the drum turns the problem is not solved.

The patent to Sherman, 2,000,649, discloses a rotary drum provided with feed pins for engaging perforations in strip material. The pins are mounted in apertures in the drum and are projected into and withdrawn from the strip perforations by a stationary cam.

The patent to Sherman et al., 2,102,651, discloses a similar device with the modification that each pin has a spiral groove which results, when the pins are thrust outwardly, in each pin being given an enforced movement not only radially of the rotating body but also circumferentially thereof so as to advance the pin slightly in the feeding direction. The patentees describe no motion of the pin in a direction laterally from the motion of the paper as it passes over the drum.

Neth discloses pin wheels, having radially projecting tapered pins, supported upon and rotated by a shaft. One of the wheels is so mounted upon the shaft that it is capable of moving laterally toward and away from the other wheel.

Ross discloses a pin or sprocket wheel having flattened feed pins for engaging marginal perforations in strip material.

In rejecting the appealed claims, the examiner said:

"Claims 1 to 20 inclusive stand finally rejected as not being patentable over each of the patents to Sherman and Sherman et al. in view of Neth and Ross. It is the position of the examiner that to provide in either the Sherman or Sherman et al. patents for limited lateral to and fro movement of the feeding pins * * * as, for example, by laterally elongating the apertures in the pin supporting drums or platens of those patents through which the pins project would not amount to invention in view of Neth. The latter discloses it to be old in the art to so mount feeding pins * * * * which engage marginal perforations in record strip material for feeding purposes that they may be moved normal to their path of travel through contact with portions of the strip immediately surrounding the strip perforations to bring them in register with said perforations in the event the distance between the rows of perforations in the opposite marginal portions of the strip should vary for any reason whatsoever. Since the feed pins of the Sherman and Sherman et al. patents are separately or individually mounted on their supporting drum or platen each will obviously be capable of movement normal to its plane of rotation relatively to the other pins when the devices of these patents are modified in the manner proposed by the examiner. Some of the claims call for flat pins whereas the feed pins of Sherman, Sherman et al. and Neth are shown as conical. However, the Ross patent teaches it to be old to use flat feed pins * * * for feeding marginally perforated material and there would be nothing patentable in view of the teaching of Ross in using flat feed pins in the Sherman and Sherman et al. device."

The board, in its decision, stated:

"The claims are drawn in broad terms, reciting capabilities rather than structure. A typical expression is that in claim 3— 'mounted for to and fro lateral motion transversely—'. The Examiner holds that the claims lack invention over the Sherman patents taken with Neff. It will be noted that the only distinction over the combination of references is to be found in the one word 'individual.'

"We are of the opinion that the combination of references is a proper one, since it would be obvious to make one of the sprocket wheels of Sherman laterally adjustable as shown by Neff. However, to make individual pins of Sherman 2,102,651, *individually* shiftable laterally would require only changing the major axis of slot 52 from that direction permitting circumferential play to a direction permitting lateral play. It is again noted that the claims call only for the broad concept, rather than for any structure to accomplish this consideration.

"We regard the 20 claims, notwithstanding their differences in extensive verbiage, as involving only this one point of alleged novelty in the art, which has advanced by small steps. Those claims of the second group above, which recite also the radial movement, merely build upon the Sherman patents and can derive no benefit from them."

The Solicitor for the Patent Office points to certain language in the Sherman et al. patent, 2,102,651, from which he argues that Sherman taught the desireability of a movement of the pins in the direction taught by appellant as being the essence of the invention. It must be con-

ceded that certain language in said Sherman et al. patent is very confusing in trying to ascertain exactly what kind of movement the patentees taught and professed to disclose or did disclose. We have examined the drawing of this patent carefully and, notwithstanding the ambiguous language involving the terms "laterally" and "circumferentially," we are inclined to agree with appellant that what Sherman sought to do was to provide a cam action for his pins so that they would protrude through the pin wheel, the pin points being smaller than the holes in the paper so as to meet any longitudinal distortion of the paper. After examining this patent carefully we find no structure that is capable of the movement to and fro transversely to the movement of the paper which appellant so clearly discloses and defines by the appealed claims.

Appellant has constructed a device where the pins are so mounted that they have to and fro lateral movement transversely to their path of travel, independently of each other. No such independent movement is shown by any of the prior art references cited. In appellant's device, each pin meets its own problem. In the Neth patent, if one stationary pin comes in contact with a distorted edge of a hole in the paper it is presumed to move the whole unit, together with the sleeve upon which the wheel is stationed, in the proper direction. This expedient obviously has lack of sensitivity and is a wholly different concept of solving the problem from that of appellant. It is our view that appellant has accomplished something characterized by novelty and usefulness in providing the independent action and the to and fro movement (which may properly be referred to as "floating") of each individual pin, thus providing a more sensitive and quicker-responding action in meeting the difficulties encountered.

The group of claims limited to the use of flat feeding pins was rejected by the tribunals below on the same ground as the first group, it being the opinion of the Patent Office that in view of the prior art the provision for flat pins did not add patentability to these claims. We think the attitude of the Patent Office as to these claims was correct with reference to the feature of the flat pin. However, no other ground of rejection being given to these claims except that which was applied to the first group, and since we differ with the board as to their patentability, it follows that the claims must all stand or fall together and we conclude that the Patent Office, on the prior art cited, was not warranted in rejecting the claims.

For the reasons stated, the decision of the Board of Appeals is reversed.

Reversed.