Martin, Judge,
delivered the opinion of the court:
This is an appeal from the decision of the Board of Appeals of the Patent Office affirming the examiner’s rejection of claims 1 to 9 and 21 to 28, the only remaining claims in appellants’ application, serial No. 327,171, for “Self-Hardening Liquid Resinous Compositions.”
The alleged invention relates to a liquid resinous composition and the product resulting from curing that composition, either alone or in contact with, and adhered to, a metallic surface or porous substrate. The composition includes a polysulfide liquid polymer of the type shown in the Jorczak et al. publication infra, recited definitively as a liquid aliphatic saturated oxahydrocarbon polythiopolymercaptan. The composition also includes a liquid polyepoxide resin, preferably having a high epoxy value,[1] as a curing agent for the said polymer, whereby to improve the setting properties and adhesive characteristics of the hardened composition. The cured composition provides a tough rubbery product which is heat and solvent resistant. Appellants further disclose that conventional curing agents, inert pigments and fillers, and other resinous additives, such as phenol-aldehyde resins,, may be optionally included in the mix.
Claims 1,5, and 21, deemed illustrative of the claims under rejection, read as follows:
I. A self-hardening liquid resinous composition adapted to form a firmly adherently bonded, solvent-resistant and heat-resistant, tough, rubbery cured coating on aluminum surfaces when applied thereto in liquid form and allowed to stand at normal room temperature for about 24-48 hours, said composition comprising a blend of a liquid polysulfide polymer and, as a curing agent therefor, a minor proportion of a liquid epoxide resin having a high epoxy value.
5. A self-hardening liquid resinous composition adapted to form a firmly adherently bonded, solvent-resistant and heat-resistant, tough, rubbery cured: coating on aluminum surfaces when applied- thereto in liquid form and allowed to stand at normal room temperature for about 24-48 hours, said composition consisting of the following components in the proportions indicated:
*750 “Tliiokol LP-2” Polysulfide polymer-1_-_.-:-1Ó0
carbon black_,-u- 30
“Bakelite BR-10683” pbenol-aldebyde resin_ 5
“Epon 562” epokide resin___•___:_’_ 12
red lead_>_4.2
21. A sulfur-containing resinous product obtained by reacting a polyepoxide with a liquid aliphatic saturated oxahydrocarbon polythiopolymercaptan, ■
The sole reference relied on is:
Jorczak et . al., Industrial & Engineering Chemistry, Yol. 43,' pages 324r-328, Eeb. 1951.
Jorczak et al. disclose the claimed polysulfide liquid polymers and show the compounding thereof to make adhesives, casting compounds, coatings, and sealers. In discussing reactions for vulcanizing the liquid polymers, Jorczak et al. state:
The liquid polymers will combine with phenol formaldehyde, resorcinol formaldehyde, furfuryl alcohol, epoxide, and related resins. The properties of •products of combination are dependent on the ratio of liquid polymer.to resin. The main values seem to lie in use of low concentration of resin to develop the toughness in the converted liquid polymers or to use fairly low concentrations of liquid polymers to develop flexibility in the resins. (Emphasis ours.)
Appellants predicate this appeal on the premise that the criticality of their claims lies in the use of a liquid polyepoxide, as a curing agent for polysulfide polymers, which they set forth in every claim except 9 and 21. They contend that the Jorczak et al. reference teaches solely the use of a solid polyepoxide not having the high epoxy value of the-liquid resin which is productive of the unexpected results alleged herein.
They argue first that the reference not only does not state that the resin is a liquid epoxide, but discloses only the use of epoxide resins to “develop the toughness in the converted liquid polymers” or the use of the said polymers to “develop flexibility in the resins.” They assert that this disclosure is limited to “physical toughening of the subsequently cured polymer” without any reaction, or the flexibilizing of the unreacted epoxide resin, which resin is necessarily in solid form so as to require “flexibilizing.” This is apparently not the case. The .cited sections must be read in context, as part of the section of the reference disclosing various reactions for vulcanizing or curing the liquid polymers. When such is done, the development of toughness in the “converted” polymers indicates a curing action by the epoxide resins to toughen the reacted or “converted” high polymers resulting. Similarly, the “flexibility in the resins” is construed to refer to the properties of resins formed from the said cure rather than to the reactants therein. Thus, the disclosure of Jorczak et al. is not limited to solid epoxide resins but is deemed generic to the vulcanization reaction *751 of amy epoxide resins with the liquid polysulfide polymers shown therein. . -■
As further proof that the reference does not anticipate the claims* appellants contend that since the quoted paragraphs of the Jorczak et al. publication states only that the liquid polymers “will combine with” the resins, whereas an earlier article by the same authors stated that the polysulfide polymers “are compatible with and react with resins,” -that therefore, in the reference publication the authors admit that no chemical reaction occurs.
We do not agree with appellants that use of the phrase “will combine with” in the reference does not pertain to a chemical reaction. In Hackh’s Chemical Dictionary (1950), the definition of “combination” reads as follows:
(1) the union or mixing of two or more substances; to form a new substance.
(2) A chemical reaction in which two elements combine and form a binary compound, or two binary compounds combine and form a complex compound. This usually involves oxidation or reduction. (Emphasis ours.)
Moreover, the paragraph in. question appears in the Jorczak et al. publication in a section entitled “Vulcanization,” which section be? gins as follows:
The most useful reaction for conversion of the liquid polymers to the high polymer state is that of direct oxidation * * *. (Emphasis ours.)
■ The same section continues by pointing out that:
There are several other reactions which d,o not. depend'o,n oxidation. Fur-fural will react to form * * *. (Emphasis ours.)
Immediately after the last cited quotation and the structural equations relating to same, the paragraph referring to the combmation of the liquid polymers with, amongst others, epoxide resins, appears. It is to be further noted that the said paragraph is followed by yet another statement disclosing that, “in some conversion reactions * * various effects are to be .noted. That the Board of Appeals failed to consider these latter parts of the Jorczak et al. publication does not affect their validity as a reference before this court. In re Hall, 41 CCPA 759, 208 F. 2d 370, 100 USPQ 46. Beading the cited paragraph in the light of these simultaneous teachings relating to the various reactions employed to vulcanize or cure the polysulfide liquid polymers, even apart from the ordinary chemical meaning of the term “combination,” we find the teaching that the “liquid polymers will combine with * * * epoxide * * * resins” is synonymous with the disclosure of chemical reaction therewith in order to vulcanize or cure the said polymers.
Although it may be true that liquid epoxides have higher epoxy values and are therefore more reactive than solid epoxide resins, as *752 appellants argue, we do not find that the results obtained would be unexpected to anyone having ordinary skill in this art. Merely because the reference does not state .explicitly that the epoxide is in liquid form does not a fortiori bestow patentability on the appealed claims. One having ordinary skill in this art would be expected to experiment in order to choose the most effective epoxide curing agent. It is obvious that the most reactive epoxide would be the first to which the chemists would turn. Therefore, one so skilled, equipped with the teachings of the Jorczak et al. publication, would not require the inventive faculty to choose the liquid epoxide resins claimed herein.
Appellants contend that the Jorczak et al. publication cannot, as a matter of law, be held to anticipate the appealed claims, even “assuming arguendo that the Patent Office interpretation has substantial plausibility.” They state that the use of said publication as a reference is barred by the “particular rule holding that a reference is too vague and indefinite to constitute a valid anticipation when it is capable of a double meaning or construction.” In support of the aforesaid “rule,” counsel cites In re Cramblet, 20 CCPA 755, 62 F. 2d 358, 16 USPQ. 74. We do not understand that case to set forth the broad proposition that any reference capable of more than one interpretation is not a valid reference. The Gramblet case involved a mercury switch in which an electrode containing a glass cup out of contact, with the envelope wall of the switch was held not anticipated by a reference teaching that the “cup * * * is suspended from the wall as by mounting it to. the electrode” where the court found the reference “had no conception of a cup entirely segregated from the switch envelope.” ' The court cited with approval an excerpt from Hillard v. Fisher, etc., 159 Fed. 439, rejecting those references as anticipations which “are so vague, involved, intricate, and contradictory that experts disagree radically as to their meaning.” We do not find such frailties in the Jorczak et al. publication. Viewed in context we find a clear unambiguous disclosure of the chemical reaction between polysulfide liquid polymers and epoxide resins, the latter not limited to solid epoxides, designed to facilitate curing the said polymers. Surely, the mere existence of a contrary interpretation of the reference does not relieve the courts of their duty of determining the proper construction, nor free the Patent Office from its obligation to require applicant to patentably distinguish thereover. We find nothing inconsistent with these views expressed in either In re Sunderland, 21 CCPA 803, 68 F. 2d 318, 20 USPQ 143 or In re Metzner, 35 CCPA 789, 164 F. 2d 618, 76 USPQ 119, cited by appellants.
*753 Proceeding to the particular claims'on appeal, we find that claims 9 and 21, reciting the reaction product of a polyepoxide with a liquid polysulfide polymer do not define over the Jorczak et al. disclosure discussed supra. The limitation appearing in claim 9 relating to the ratio of epoxy groups to thiol groups is not considered critical, since the determination of the said ratio is an obvious choice designed to facilitate the epoxy addition to the mercaptan terminal groups of the polysulfide polymer. We accordingly affirm the rejection of claims 9 and 21.
Claims 1 to 3, 6, 7, and 22 to 28 are drawn to “self-hardening liquid resinous compositions,” the hardened products thereof, and articles obtained by bonding or impregnating metallic or porous layers with the said products. The compositions set forth contain various proportions of a liquid polysulfide polymer and a liquid epoxide resin. These claims define only in degree over the Jorczak et al. teaching of the compounding of the polysulfide polymers with epoxide resins, and the use of the compounded form “as adhesives, casting compounds, coatings, and sealers.” The limitation to liquid epoxides, discussed-above, involves only the choice of the more reactive resins disclosed by the generic teaching of the reference, which choice has not been shown to be critical. Therefore, in the absence of any showing that the choice of the recited ranges requires more than chemical skill, the rejection of claims 1-3,6,7, and 22-28 affirmed.
Claim 4 recites the self-hardening composition referred to above further containing “a metallic oxide activating agent.” This limitation has not been alleged to produce any unexpected results in the cured product. Furthermore, Jorczak et al. show the use of zinc oxide as a reinforcing filler and “converting agent” for most uses; hence, the addition of a metallic oxide to the epoxide-polysulfide reaction mixture would not amount to “invention.”
Claims 5 and 8 are drawn to a specific self-hardening composition and a metallic surface coated with the cured product thereof. No showing that any unobvious results accrue from the use of the specified composition has been attempted. Jorczak et al. disclose not only the reaction of the polysulfide polymers with epoxide resins but also teach the reaction with phenol formaldehyde resins, recited herein, and there is nothing to indicate that the use of both such resins would be productive of any but the expected results. The rejection of claims 5 and 8 is affirmed.
For the reasons appearing above, the decision of the Board of Appeals is affirmed.

The term “epoxy value” representa the fractional number of epoxy groups contained in 100 grams of resin. Epoxy Resins, Lee and Neville, McGraw-Hill Book Co., 1957, page 21.